# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY GUERRERO, | CASE NO. 1:15-cv-0962-BAM |
| Plaintiff | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant | |

## **INTRODUCTION**

Plaintiff Michael Guerrero ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe. The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

///

## FACTS AND PRIOR PROCEEDINGS

On January 30, 2012, Plaintiff filed his current applications for DIB and SSI. Plaintiff initially alleged disability beginning December 31, 1995, but later amended his onset date to April 1, 2011. AR 217-218, 225. Both applications were denied initially and upon reconsideration. AR 29-64, 172. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Following a hearing, ALJ Daniel Heely issued a decision on December 12, 2013 denying benefits. AR 13-23. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 6-9. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on November 3, 2013 in Stockton, CA. AR 29. Plaintiff appeared and testified, along with representative Romina Altoya and impartial Vocational Expert ("VE") Freeman Leeth, Jr. AR 29.

In response to questions from the ALJ, Plaintiff testified that he had a seventh grade education. He did not complete high school or obtain his GED. AR 34. At the time of the hearing, Plaintiff lived with his daughter and her family, including his four-year old grandson and ten-year old granddaughter. AR 43.

When asked about his impairments, Plaintiff testified that his doctor prescribed the use of a cane. AR 36-37. Plaintiff explained he uses a cane because of lingering issues from a lower back surgery many years ago. AR 37-38. He still experiences pain in that area. AR 38. Plaintiff's attorney questioned him further about his physical impairments including that bending and stooping aggravated his back pain. He had flareups that occurred about two to three times per week. During his "flareups," Plaintiff testified that he had to lie in bed and his brother would pick up his grandson from school on those days. AR 49-50. Plaintiff testified that he has trouble sleeping and would get about four hours of intermittent sleep at night. AR 51. When asked about his abilities despite his impairments, Plaintiff estimated he could stand and sit for 45 minutes to an hour, walk for a block, and lift a gallon of milk. AR 51-52. With respect to Plaintiff's mental

1    impairments, he experiences depression, but stopped taking depression medications over five

2    years ago.  AR 43.  He was specifically taken off the medications because they upset his stomach.

3    AR 53.  He still experiences depression, however, especially after the death of his mother.  AR 52.

4         When asked about his daily activities, Plaintiff testified that he would watch his grandkids

5    when they get home from school and he sometimes cooks for himself. AR 44-46. Plaintiff

6    regularly drives to pick up his grandson from school, and to go to the doctor. AR 47.  Plaintiff,

7    however, does not regularly drive long distances.  AR 49.  Plaintiff drinks alcohol on occasion, but

8    he testified that it had been six to ten years since he had taken any illegal drugs.  AR 56.

9         The ALJ heard testimony from the vocational expert.  Plaintiff's past relevant work was

10   described as a caregiver.  Plaintiff also previously worked as an "extruder," however the ALJ

11   acknowledged that Plaintiff's extruder work occurred in 1997 and therefore may not be considered

12   relevant work.  AR 58.  In response to a hypothetical question posed by the ALJ, the VE testified

13   that an individual of the same age, education, and work background as Plaintiff that could lift and

14   carry 20 pounds occasionally, ten pounds frequently; sit, stand, and walk for six hours in an eight

15   hour day, who could push or pull occasionally with bilateral upper extremities, and who could

16   only occasionally climb ramps, stairs, and stoop, kneel, crouch and crawl could perform the jobs

17   of sorter, labeler, and assembler.  AR 60-62.

18        When the VE was examined by the Plaintiff's attorney, the VE testified that no

19   occupations exist for a person who would need to take numerous unscheduled rest breaks AR 63.

20        **Medical Record**

21        The entire medical record was reviewed by the Court. AR 288-512. The medical evidence

22   will be referenced below as necessary to this Court's decision.

23                    **THE ALJ'S DECISION**

24        Using the Social Security Administration's five-step sequential evaluation process, the

25   ALJ determined that Plaintiff did not meet the disability standard. AR 13-23.  The ALJ found

26   Plaintiff had the following severe impairments: degenerative disc disease, high blood pressure,

27   headaches, and depression. AR 15.  Nonetheless, the ALJ determined that the severity of the

28   Plaintiff's impairments did not meet or exceed any of the listed impairments. Based on a review of

the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work and can

> push and pull occasionally and occasionally reach overhead with the bilateral upper extremities. The claimant can occasionally balance, stoop, crouch, kneel, crawl and climb ramps or stairs but never climb ladders, ropes or scaffolds. He is limited to work involving simple, routine and repetitive tasks and is precluded from work environments involving hazards.

AR 16.

The ALJ found that although Plaintiff could not perform any past relevant work, there were jobs that existed in significant numbers in the national economy that Plaintiff could still perform. AR 22-23.  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment

which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that they are not only unable to do their previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

The issues Plaintiff presents are whether the ALJ: (1) properly weighed the medical evidence; (2) reasonably accounted for his social limitations in the RFC; (3) properly rejected evidence supporting his need for an assistive device; and (4) properly evaluated his credibility. (Doc. 15 at 2).

## DISCUSSION

### 1.    Whether the ALJ Properly Evaluated Plaintiff's Social Functioning Limitations

Plaintiff's first and second arguments challenge the ALJ's adoption of his social functioning limitations.  According to Plaintiff, the ALJ improperly rejected portions of the medical evidence that demonstrated that he would have significant difficulties with social functioning including that he would struggle with regular attendance and consistent participation at work, would have difficulty working a normal work day/week, and that he may experience difficulties getting along with supervisors, coworkers, and the general public.  Plaintiff argues that while the ALJ agreed that, in social functioning, Plaintiff has moderate difficulties, the ALJ failed to account for this in his RFC.  Instead, the ALJ limited Plaintiff "to work involving simple, routine and repetitive tasks." AR 16.  Plaintiff argues that this was also in error as a limitation to simple, routine and repetitive tasks does not sufficiently account for the moderate restrictions in his social functioning.  (Doc. 15 at 9-14).

#### A.    The ALJ Properly Evaluated the Social Functioning Evidence

As to Plaintiff's first argument, he primarily argues that despite assigning great weight to consultative examiner Dr. Philip Cushman's opinion, the ALJ improperly rejected portions of the examining physician opinion without providing sufficient reasons for doing so.    The

1  Commissioner replies, however, that the ALJ considered the entire medical record and properly

2  gave specific and legitimate reasons for rejecting the portions of Dr. Cushman's opinion that were

3  not supported by the record.  (Doc. 16 at 5-6).

4       A physician's opinion is not binding upon the ALJ and may be discounted where another

5  physician contradicts it. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ may

6  reject an uncontradicted opinion of a treating or examining medical professional only by

7  identifying "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). In

8  contrast, a contradicted opinion of a treating or examining professional may be rejected for

9  "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81

10  F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine

11  credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The

12  ALJ's resolution of the conflict must be upheld when there is "more than one rational

13  interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

14  1992) ("if the evidence can support either outcome, the court may not substitute its judgment for

15  that of the ALJ").

16       With regard to Dr. Cushman's examining opinion, the ALJ found:

17
18  On December 28, 2006, Plaintiff underwent a consultative psychological evaluation
     by Dr. Phillip Cushman.  Dr. Cushman diagnosed the claimant with Polysubstance
19  Dependence (amphetamine, cocaine, marijuana, alcohol) in partial remission;
     Amphetamine induced Psychotic Disorder with Hallucinations, by history, in
20  remission; rule out Post-Traumatic Stress Disorder (premorbid), by history;
     Dysthymic Disorder, early onset with a GAF of 55.

21  Dr. Cushman opined the claimant will have difficulties performing detailed or
22  complex tasks in a vocational setting; however he is capable of performing simple
     and repetitive tasks; appears capable of following simple verbal instructions from
23  supervisors, and occasionally complex instructions; and appears capable of dealing
     with the usual stressors encountered in a competitive work environment. However,
24  he will have difficulties with regular attendance and consistent participation with
     complaints of pain and malaise; special or additional supervision would be needed
25  in the area of monitoring for substance abuse; and he may, however, run into
26  difficulties getting along with supervisors, coworkers, and the general public.

27  Dr. Cushman's opinion is [given] great weight to the findings of ability to perform
     simple repetitive tasks, as this is consistent with the evidence of record as a whole.
28  However with respect to the remaining work limitations; these are given little

weight as they are not based upon any objective findings or similar behavior like difficulty with regular attendance or needing special supervision but rather Dr. Cushman's one time impression of the claimant.

AR 19, 483-488.

The ALJ also considered examining psychologist David Dahl's more recent 2012 mental evaluation.

The ALJ found that,

Dr. Dahl noted the claimant's mood was depressed and his expression was flat. However, his memory was good; as was his concentration as he was able to follow a three step command without repetition of the command sequence.  Dr. Dahl diagnosed claimant with Major depressive disorder and a GAF score of 58.

Dr. Dahl opined the claimant does have the ability to accept instructions from supervisors with moderate impairment; he is able to interact appropriately with coworkers and the public with moderate impairment; he has the ability to perform work activities consistently with moderate impairment; he is able to attend regularly in the workplace with moderate impairment; he is able to complete a normal workday or work without interruptions from a psychotic condition with moderate impairment; and is able to deal with usual workplace stressors with moderate impairment.

Dr. Dahl's opinion is given great weight as a licensed psychologist who had the opportunity to do a comprehensive examination of the claimant.  Further, Dr. Dahl's opinion is supported by objective findings including observations upon mental status testing as well as also being consistent with the evidence of record as a whole.

AR 21, 321-322.

Here, the examining opinion of Dr. Cushman—who concluded Plaintiff would have difficulties with regular attendance and need special supervision to monitor his substance abuse— arguably contradicted the examining opinion of Dr. Dahl who found that Plaintiff was only moderately impaired in his abilities to attend work. Thus, the ALJ was required to identify specific and legitimate reasons for rejecting the additional limitations imposed by Dr. Cushman, which he did.

The ALJ observed that the social limitations found by Dr. Cushman were not supported by any objective findings or similar behavior.  This was an appropriate reason to reject Dr. Cushman's  vague statements about Plaintiff's work limitations in favor of the more specific

opinion expressed by Dr. Dahl.  An ALJ need not accept the opinion of a physician if that opinion is inadequately supported "by the record as a whole."  *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).   Typically, the lack of evidence supporting a physician's opinion is a legitimate basis to reject it. *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, *as amended on reh'g* (9th Cir. 2001) (rejecting treating physician's opinion that claimant suffered from a herniated disk where no MRI scan ever showed a herniated disk); 20 C.F.R. § 404.1527(c)(3) (in determining the weight to give to the opinion of a treating physician, the ALJ should consider factors such as the degree to which the opinion is supported by relevant medical evidence).

While Plaintiff argues that the ALJ failed to give a specific reason to discount Dr. Cushman's social functioning limitations, the ALJ's opinion demonstrates that the ALJ discounted Dr. Cushman's opinion only to the extent that he opined that Plaintiff would have more than a moderate limitation in social functioning.   Dr. Cushman found that Plaintiff would "have a difficult time working a normal day" and he would "have difficulties with regular attendance and consistent participation." AR 488.   Dr. Cushman was, however, ambiguous about the level of difficulty Plaintiff would face.   The ALJ gave little weight to those findings due to a lack of supporting objective evidence or similar behavior. Dr. Dahl found more specifically that in areas such as work attendance Plaintiff would face, at most, a moderate impairment. AR 321-322. The ALJ was free to fully adopt this more precise opinion as fully supported by the record.

The heart of the issue here is the ALJ's preference for the more specific opinion by Dr. Dahl who noted that Plaintiff would have moderate impairments in his ability to attend work, deal with workplace stressors, and work without interruption. It was reasonable for the ALJ to conclude that to the extent that Dr. Cushman was arguing that Plaintiff would have more than a moderate difficulty in regularly attending work and getting along with co-workers, that opinion was not supported by any objective evidence.   Indeed, the ALJ pointed to other evidence in the record from the state agency reviewing physicians who found Plaintiff had mild limitations is activities of daily living and social functioning and moderate limitations is concentration, persistence and pace.  AR 19, 452-467, 468-471. The ALJ also considered Dr. Dahl's more current

mental evaluation that found Plaintiff's workplace abilities to be moderately impacted by a mental impairment.

Based on these opinions, that ALJ found that Plaintiff was moderately impaired in his social functioning.  The logical inference flowing from the adoptions of these opinions is that the ALJ agreed with Dr. Cushman's findings that Plaintiff had moderate impairments in social functioning.  However, to the extent that Dr. Cushman's vague statement about the difficulties Plaintiff could face at work could be interpreted to mean that Plaintiff was severely limited in his social functioning, that opinion is not supported by the objective findings or by any medical evidence in the record.

Alternatively, even assuming that the ALJ erred in rejecting portions of Dr. Cushman's opinion, any error here is harmless.  Based on his assessment of Plaintiff's RFC, the ALJ concluded that Plaintiff could perform "unskilled light work" as a sorter, ticketer, or assembler. AR 23.   The Ninth Circuit has determined the limitation to unskilled work adequately encompasses a claimant's "moderate mental residual functional capacity limitations." *See, e.g.*, *Thomas v. Barnhar*t, 278 F.3d 947, 955 (9th Cir. 2002); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008) (concluding the limitation to "simple, routine, repetitive" tasks accommodated the examining physician's findings that the claimant had "several moderate limitations").  Unskilled work is that which requires little or no judgment to do simple duties that can be learned on the job in a short period of time and needs little specific vocational preparation. *See* 20 C.F.R. § 416.968(a); *see also* SSR 83-10, 1983 SSR LEXIS 30. The basic mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions. SSR 85-15, 1985 SSR LEXIS 20.

By limiting Plaintiff to "simple repetitive tasks" in unskilled work, the RFC adequately captures Drs. Cushman and Dahl's opinions that Plaintiff has moderate impairments in social functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(g) ("[T]he primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people)."); *see, e.g., Rogers v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 13741, at *36-37, 2011 WL 445047 (E.D. Cal. Jan. 25, 2011) (collecting cases) (finding that generally, "unskilled work

accommodates a need for limited contact with the general public."), *aff'd*, 490 Fed. Appx. 15 (9th Cir. Jul. 20, 2012); *Langford v. Astrue*, 2008 U.S. Dist. LEXIS 39294, at *7 (E.D. Cal. May 14, 2008) ("unskilled work . . . accommodated [the claimant's] need for 'limited contact with others'"). Accordingly, the ALJ's ultimate RFC finding adequately encompassed the findings from the examining physicians and for that reason the Court declines to remand this case on the basis that the ALJ improperly weighed the medical evidence.

### B.   The ALJ Adequately Accounted for Plaintiff's Social Limitations in the RFC.

Having determined that the ALJ's evaluation of the social functioning evidence was supported by the record as a whole, the Court next considers whether the ALJ appropriately translated Plaintiff's supported social limitations into the RFC.  Plaintiff's argument that the ALJ's limitation to "simple, routine tasks" failed to adequately address his moderate limitations in social functioning directly contradicts Ninth Circuit precedent on this issue.  Accordingly, the ALJ's findings here are free from error.

As addressed above, in an unpublished decision, the Ninth Circuit concluded that deficiencies in a claimant's social functioning may be captured by an ALJ limiting the claimant to simple, repetitive tasks. *See Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed. App'x. 15 (9th Cir. 2012) (holding that a residual functional capacity for simple routine tasks, which did not expressly note the claimant's moderate limitations in interacting with others, nonetheless adequately accounted for such limitations).[1]  The *Rogers* court noted that moderate impairments in social functioning including impairments such as "maintaining social interactions with co-workers, supervisors, or the public" did not equate to a substantial loss of a claimant's basic work-related abilities for the purposes of determining a claimant's RFC. *Id.*; *see also Martin v. Astrue*, No. 2:12-cv-0033-KJN, 2013 U.S. Dist. LEXIS 19651, 2013 WL 552932, at *8 (E.D. Cal. Feb. 13, 2013) (same). The ALJ in *Rogers* was therefore not required to include the moderate limitations in social functioning in his assessment of Plaintiff's RFC.  *Rogers*, 490 Fed. App'x 15, 17-18. Applying the holding in *Rogers*, Plaintiff's argument that the ALJ improperly failed to account for

---

[1]      Pursuant to Federal Rules of Appellate Procedure 32.1, the Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1.

1    his social functioning limitations fails. The ALJ's restriction to simple tasks adequately

2    encompassed Plaintiff's moderate limitations including dealing with supervisors and the public,

3    stressors encountered in a competitive workplace, and with completing a normal workday.

4    Consequently, Plaintiff has not shown error.

5    **2.    The ALJ Properly Evaluated Plaintiff's Use of a Cane**

6          In his next issue, Plaintiff argues that the ALJ erred by failing to provide legally sufficient

7    reasons for rejecting the opinions of Drs. Madireddi and Hernandez who opined that Plaintiff

8    required the use of a cane and would have difficulty with fine and gross manipulation. (Doc. 15 at

9    14).[2]

10         SSR 96-9p provides that "[t]o find that a hand-held assistive device is medically required,

11   there must be medical documentation establishing the need for a hand-held assistive device to aid

12   in walking or standing, and describing the circumstances for which it is needed (i.e., whether all

13   the time, periodically, or only in certain situations; distance and terrain; and any other relevant

14   information). The adjudicator must always consider the particular facts of a case." SSR 96-9p,

15   1996 WL 374185, at *7; *see also Flores v. Colvin*, No. 1:14-cv-02096-SKO, 2016 WL 2743228,

16   at *14 (E.D. Cal. May 11, 2016) (discussing SSR 96-9p).

17         Based on his review of the record, the ALJ found that Plaintiff's need for a cane was

18   unclear. AR 20. In reviewing the medical evidence, the ALJ noted that Dr. Madireddi found that

19   Plaintiff had no tenderness over the lumbar spine and no spasms, a full range of motion in both

20   hips, knees and ankles, with 5/5 motor strength in his lower extremities, and no sensory deficits.

21   AR 18, 473. Dr. Madireddi also opined that Plaintiff could stand and walk six hours in an eight

22   hour day, lift twenty pounds occasionally, and ten pounds frequently, and "the use of a cane was

23   appropriate at all times except in his own home." AR 18, 474. The ALJ adopted Dr. Madireddi's

24   opinion "in terms of the light residual functional capacity" as supported by the objective findings

25   in the examination and consistency with the record as a whole. AR 18.

26   ─────────────

27   [2]      The Court disagrees with Plaintiff's statement that Dr. Hernandez opined that Plaintiff required the use of a
     cane. Unlike Dr. Madireddi, Dr. Hernandez simply noted Plaintiff's statement that he "use[d] a cane for some
     assistance." AR 301. Dr. Hernandez appears to have merely parroted Plaintiff's statements as his examination report

28   does not indicate that a cane was medically necessary. AR 301. The Court therefore limits its analysis to the findings
     opined by Dr. Madireddi.

Supporting the ALJ's finding that the medical need for a cane was unclear, the ALJ pointed to additional evidence in the record that did not support Plaintiff's use of a cane. The ALJ relied on the opinion of the state agency reviewing consultants who opined that Plaintiff could stand and walk for six hours in an eight-hour day.  AR 481. The agency physicians further noted that, overall, Plaintiff lacked credibility with respect to his use of a cane; stating that while Plaintiff used a cane at Dr. Madireddi's December 1, 2006 consultative examination, he did not use a cane or limp at Dr. Cushman's examination on December 28, 2006.  AR 19,473, 481, 486. The agency physicians also noted that "at the physical [consultative examination, Plaintiff] was noted to be alternating [his] limp with both legs and at the [psychiatric examination] his gait was noted as [normal]."  AR 481.   Moreover, as the ALJ discussed in the comprehensive and clear credibility evaluation, the record documents numerous occasions where Plaintiff provided inconsistent statements undermining Plaintiff's subjective need for a cane.  The ALJ noted that on June 22, 2012, Plaintiff reported to his physician that he injured himself playing football. AR 20, 323.  The ALJ correctly found that Plaintiff's football injury was wholly inconsistent with earlier claims that he was unable to move due to chronic injuries suffered decades earlier. AR 20, 36-38.

It is proper for a reviewing court to read an ALJ's discussion of one physician's opinion and draw inferences relevant to other physicians if those inferences are there to be drawn. *Magallanes v. Bowen*, 881 F.2d 747, (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties from drawing specific and legitimate inferences from the ALJ's opinion."). Here, the Court infers that, while the ALJ stated he gave great weight to Dr. Madireddi's opinion, the ALJ did not credit the exertional limitations that exceeded the light RFC, including Plaintiff's need for a cane, because those findings were not supported by the objective evidence and the overall record.  On this record, the Court declines to remand this case based on the ALJ's rejection of Plaintiff's claimed need for a cane.

Plaintiff also argues that the ALJ failed to address Dr. Madireddi's opinion that due to an injury to his right index finger, Plaintiff would have difficulty using his right hand for fine and gross manipulations. AR 473, 474.  With respect to Dr. Madireddi's December 1, 2006 opinion, the Court notes that "[m]edical opinions that predate the alleged onset of disability are of limited

relevance." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Nonetheless, Dr. Madireddi's opinion on Plaintiff's hand manipulations is brief, conclusory, and provided no explanation of specific functional limitations resulting from Plaintiff's right hand injury. *See* SSR 96-3p, 1996 SSR LEXIS 10, [WL] at *2; *Thomas v. Barnhar*t, 278 F.3d 947, 957 (9th Cir. 2002) (holding that the ALJ need not accept any opinion that is "brief, conclusory, and inadequately supported by clinical findings").   None of the medical evidence in the record indicates limitations associated with Plaintiff's right hand pain. AR 347, 349-350. In addition, Plaintiff's records fail to show evidence of treatment or complaints regarding problems with his hands. AR 323-345. Therefore, while Plaintiff argues that the ALJ improperly omitted this evidence, Plaintiff fails to point to any significant medical evidence that the ALJ misconstrued or overlooked.   An ALJ need not address every piece of evidence in the record, but only evidence that is significant or probative.  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), *superseded by regulation on other grounds as stated in Rosas v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 167332, at *12-13 (D. Or. Dec. 3, 2014).  Thus, the ALJ's opinion with respect to Plaintiff's right hand pain was not in error.

**3.    The ALJ Gave Sufficient Reasons to Discount Plaintiff's Credibility**

In his final issue, Plaintiff challenges the ALJ's credibility findings with respect to his disability onset date.  According to Plaintiff, the ALJ mistakenly relied on Plaintiff's original disability onset date when finding that Plaintiff inappropriately earned income during the time period Plaintiff alleged total disability.  AR 17-18. Plaintiff argues that "had the ALJ realized the earnings were before [his amended onset date], it could have changed [the ALJ's] opinion."  (Doc. 15 at 15-16).  Plaintiff's argument is meritless.

An ALJ may consider a number of factors in weighing a Plaintiff's credibility: (1) a reputation for truthfulness; (2) inconsistencies either in the testimony or between the testimony and conduct; (3) daily activities; (4) work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms and complaints. *Thomas*, 278 F.3d at 958-959; *see also Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991)(en banc).  As a rule, an ALJ can reject a claimant's subjective complaints by "expressing clear and convincing

1    reasons for doing so." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

2    "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and

3    what evidence undermines a claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493

4    (9th Cir. 2015) (internal quotation marks and citation omitted).

5         The ALJ highlighted a litany of inconsistent statements he relied on when discounting

6    Plaintiff's credibility.   AR 18-21.  First, the ALJ found Plaintiff made inconsistent statements

7    regarding the injuries he sustained in April 2012.   While Plaintiff told Dr. Dahl that his neck and

8    shoulder pain stemmed from a recent football injury, just two days prior to that statement, Plaintiff

9    reported that his neck pain stemmed from yard work.  AR 20-21, 320, 323, 335. The ALJ also

10   noted that Plaintiff told Dr. Dahl that he was currently homeless and spent his day "walking

11   around," despite claiming he had difficulty walking. Plaintiff also stated he needed the constant

12   use of a cane because of his leg and back injuries, but also complained that his pain was due to

13   playing football. AR 21, 320.  With respect to other statements about Plaintiff's earnings, Plaintiff

14   indicated he last worked as a caregiver for his mother until February 2012, but on his application

15   Plaintiff claimed he last worked in March 2011.  AR 21, 281, 319.  Additionally, Plaintiff reported

16   that he was unable to drive, but drove to his consultative examinations, presented a valid driver's

17   license, and testified in November 2013 that he drove his grandson to school. AR 21, 43-45, 318,

18   346.

19        An ALJ may properly consider a claimant's inconsistent statements and testimony when

20   assessing credibility. *Thomas*, 278 F.3d at 958-59 (ALJ may consider inconsistencies either in

21   either claimant's testimony or between her testimony and her conduct when weighing the

22   claimant's credibility). Based on the number of inconsistent statements relied on by the ALJ, any

23   error in the ALJ's reliance on the incorrect disability onset date is harmless. *See Carmickle v.

24   Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1162 (9th Cir. 2008) (when ALJ provides specific

25   reasons for discounting claimant's credibility, decision may be upheld even if certain reasons were

26   invalid as long as "remaining reasoning and ultimate credibility determination" were supported by

27   substantial evidence (emphasis omitted)); *Strutz v. Colvin*, 2015 U.S. Dist. LEXIS 104429, 2015

28   WL 4727459, at *7 (D. Or. Aug. 10, 2015) (upholding credibility finding because ALJ provided at

least one valid reason to discount claimant's testimony).

The ALJ further discounted Plaintiff's credibility based on Plaintiff's overall conservative treatment and failure to follow his prescribed treatment plan.  AR 20, 365 (ALJ acknowledged that Ibuprofen reduced Plaintiff's pain and that Plaintiff missed his physical therapy appointments after only one session). Evidence of the effects of conservative treatment, is sufficient to discount a claimant's testimony regarding severity of an impairment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) *citing Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (factors in weighing a claimant's credibility, include "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment").  These were additional specific and legitimate reasons to discount Plaintiff's credibility.

For the reasons stated above, the ALJ's assessment of Plaintiff's credibility does not warrant reversal.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgement in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Michael Anthony Guerrero.

IT IS SO ORDERED.


Dated**:   September 28, 2016**                    */s/ Barbara A. McAuliffe*
                                                    UNITED STATES MAGISTRATE JUDGE

15